UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:15-cv-81162-ROSENBERG/BRANNON

KATHLEEN WOODY, for herself and as Personal
Representative of the Estate of Mark G. Baker,
MARTIN G. BAKER, and LUKE FRANKLIN BAKER,

    Plaintiffs,

v.

DELRAY MEDICAL CENTER, FAIR OAKS
PAVILION AT DELRAY MEDICAL CENTER,
and DR. LOUIS D. GOLD,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND DISMISSING COMPLAINT WITHOUT PREJUDICE

**THIS CAUSE** is before the Court on Defendants Delray Medical Center and Fair Oaks Pavilion at Delray Medical Center's ("Fair Oaks") Motion to Dismiss Plaintiffs' Complaint and to Strike Plaintiffs' Demands for Punitive Damages and Attorneys' Fees [DE 22], as well as Defendant Dr. Louis D. Gold, M.D.'s ("Dr. Gold") Motion to Dismiss/Motion to Strike and Motion for More Definite Statement [DE 24]. The Court has reviewed the motions, Plaintiffs' responses, *see* DE 26 and 28, and Defendants' replies, *see* DE 27 and 30. As more fully explained below, the Motions [DE 22, 24] are **GRANTED**.

    The Defendants argue that it is not clear precisely what claims Plaintiffs are attempting to bring, although the claims appear to sound, at least in part, in medical malpractice. The Court agrees. Count 1 of the Complaint alleges: "Defendants' egregious actions violated [the decedent's] human rights and were the proximate cause of [the decedent's] death." DE 1 at 9 (capitalization omitted). Count 2 alleges: "Defendants' gross and malicious actions of abuse

1

including fraud falsifying of medical records, human rights violations of abuse of power, denial of treatment for lethal combination of 4 hospital administered opiates and alcohol for non-medical reasons, malicious infliction of emotional distress and reckless disregard for the consequences caused [the decedent's] death and pain and suffering to [the decedent] and his family." *Id.* at 10 (capitalization omitted). Accordingly, the Complaint [DE 1] is **DISMISSED** without prejudice for Plaintiffs to clarify the nature of the claims they are pursuing.

The Defendants have raised additional arguments in support of their motions to dismiss. The Court addresses these arguments below. To the extent Plaintiffs' claims against Defendant Delray Medical Center sound in medical malpractice, these claims are **DISMISSED** with prejudice for failure to comply with Florida's pre-suit notice requirements for such claims within the time specified in the statute of repose. Additionally, Defendant Fair Oaks Pavilion at Delray Medical Center is **DISMISSED** with prejudice because it is merely a fictitious name owned by Defendant Delray Medical Center.

## I.   BACKGROUND

In considering a motion to dismiss, the Court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321 (11th Cir. 2012). Accordingly, the following facts are taken from Plaintiffs' Complaint:

In August 2011, the decedent was 26 years old. *See* DE 1 at 7 ¶ 34. On August 14, 2011, he was admitted to Boca Raton Community Hospital after being found unconscious and unresponsive from a suspected alcohol overdose. *Id.* at 3-4 ¶¶ 5-6. Later that day, he was transferred to Defendant Fair Oaks for a mental health evaluation under Florida's Baker Act. *Id.*

at 3-4 ¶ 5. Defendant Dr. Gold evaluated the decedent and "stated that hospitalization for the following 2 to 3 days was medically necessary." *Id.* at 4 ¶ 7.

The decedent's parents, who were living in Maryland, flew from Baltimore to Fort Lauderdale on August 15, 2011. *Id.* at 4-5 ¶¶ 8-11. After their flight landed, the decedent's father, Plaintiff Martin Baker, called the hospital and was informed that the decedent been discharged at 12:30 p.m. *Id.* at 5 ¶ 14. Hospital administrators "refus[ed] to supply information regarding [the decedent's] condition prior to discharge and location." *Id.* at 5 ¶ 15. Around 5:00 p.m., the decedent's father contacted Defendant Dr. Gold, who refused to give information regarding the decedent's condition and stated, "I hear you are going to sue me and I am retaliating with a felony against your son[.]" *Id.* at 5 ¶ 16.

The decedent's parents searched for him to no avail. *Id.* at 5 ¶ 17. They contacted the police, who informed them that at 8:10 p.m. on the night of August 15, 2011, a representative of Defendant Fair Oaks had "initiate[d] a delayed Report 8 hours after the decedent's discharge of a[n] alleged improper action by [the decedent] although no victim was listed." *Id.* at 5-6 ¶ 18. "The police discounted the Delayed Report . . . as so deficient as to be spurious and specious." *Id.* at 6 ¶ 19.

Defendant Fair Oaks discharged the decedent "without money, without transportation, [and] without any place to go." *Id.* at 7 ¶ 31. Defendants' "vindictive threats, abuse of authority, and retaliation" made the decedent "afraid to be seen by anyone or seek help[.]" *Id.* at 6 ¶ 22. the decedent "walked 9 miles in the driving rain without access to water or food with 4 hospital administered opiate drugs and alcohol inside that the hospital did not medically detox and he died within hours." *Id.* at 6 ¶ 23. the decedent's body was discovered the next morning, and a coroner's report listed the cause of death as "the combination of alcohol and 4 hospital

3

administered opiates in the early morning hours of August 16, 2011." *Id.* at 6-7 ¶¶ 25-27. After his death, the decedent's admission and discharge records were "edited" and "changed" by Defendant Gold and/or others. *Id.* at 6-7 ¶¶ 24, 28.

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (alteration added) (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556).

## III.     ANALYSIS OF ADDITIONAL ARGUMENTS RAISED BY DEFENDANTS

### A.     <u>Claims against Defendant Fair Oaks</u>

Defendant Delray Medical Center argues that Defendant Fair Oaks should be dismissed with prejudice because it is merely a fictitious name owned by Defendant Delray Medical Center, rather than a separate entity. *See Mastro v. Seminole Tribe of Fla.*, 578 F. App'x 801, 802-03 (11th Cir. 2014) (affirming dismissal where defendant was "not a separate legal entity, but instead merely a fictitious name with no independent existence under which the [co-defendant] conducts business"). Defendants have submitted a filing from the Florida Department

of State Division of Corporations that proves this. *See* DE 22-1. The Court may consider this type of public record on a motion to dismiss. *See Universal Express, Inc. v. U.S. Sec. & Exch. Comm'n*, 177 F. App'x 52, 53 (11th Cir. 2006) ("A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment. . . . Public records are among the permissible facts that a district court may consider."). Accordingly, Defendant Fair Oaks Pavilion at Delray Medical Center is **DISMISSED** with prejudice.

B. <u>**Claims for medical malpractice that caused the death of the decedent**</u>

    1. **Plaintiffs' medical malpractice claim against Defendant Delray Medical Center is dismissed with prejudice for failure to comply with Florida's pre-suit notice requirements.**

"The statutory framework governing [Florida] medical malpractice actions is both uncommonly complex and unique among other Florida statutory schemes. . . . Stringent presuit investigatory requirements are the hallmarks of this framework." *Musculoskeletal Inst. Chartered v. Parham*, 745 So. 2d 946, 948 (Fla. 1999). Under Florida law, a prospective medical malpractice plaintiff must conduct a pre-suit investigation to ascertain whether medical malpractice occurred and obtain a "verified written medical expert opinion" providing "[c]orroboration of reasonable grounds to initiate medical negligence litigation[.]" Fla. Stat. § 766.203(2). The plaintiff must then serve a notice of intent to initiate litigation on any prospective defendants as follows:

> After completion of presuit investigation pursuant to s. 766.203(2) and prior to filing a complaint for medical negligence, a claimant shall notify each prospective defendant by certified mail, return receipt requested, of intent to initiate litigation for medical negligence. Notice to each prospective defendant must include, if available, a list of all known health care providers seen by the claimant for the injuries complained of subsequent to the alleged act of negligence, all known health care providers during the 2-year period prior to the alleged act of negligence who treated or evaluated the claimant, copies of all of the medical records relied upon by the expert in signing the affidavit, and the executed authorization form provided in s. 766.1065.

5

Fla. Stat. § 766.106(2)(a). The notice of intent to initiate litigation must be served within the statute of limitations. *See* Fla. Stat. § 766.106(4) ("The notice of intent to initiate litigation shall be served within the time limits set forth in s. 95.11 . . . .").

"The presuit investigation requirements are not jurisdictional but rather are conditions precedent to the bringing of a medical malpractice action." *Clark v. Sarasota Cty. Pub. Hosp. Bd.*, 65 F. Supp. 2d 1308, 1310 (M.D. Fla. 1998) *aff'd sub nom. Clark v. Sarasota Cty. Pub. Hosp.*, 190 F.3d 541 (11th Cir. 1999). "Nevertheless, where a plaintiff fails to comply with a certain aspect of presuit procedure and the default cannot be remedied before the statute of limitations runs, the court's dismissal should be with prejudice." *Clark*, 65 F. Supp. 2d at 1310; *see, e.g., Mangin v. Robertson*, No. 6:07CV1649-ORL-18KRS, 2008 WL 2522576, at *2 (M.D. Fla. June 24, 2008) ("Plaintiff has made no allegation regarding compliance with Chapter 766 of the Florida Statutes, and has failed to satisfy the state-imposed conditions precedent to filing a complaint for medical malpractice. Accordingly, the Court dismisses Plaintiff's claims against Robertson and the Hospital.").

Defendant Delray Medical Center argues that Plaintiffs' claims against it sound in medical malpractice, and should be dismissed for failure to comply with these requirements within the time provided in the statute of limitations or statute of repose. *See* DE 22 at 5-6. The Court finds that Plaintiffs' claims sound, at least in part, in medical malpractice claims subject to the requirements of Florida Statute § 766.106(2)(a). That statute defines claims for medical malpractice or medical negligence as claims "arising out of the rendering of, or the failure to render, medical care or services." Fla. Stat. § 766.106(1)(a). To the extent Plaintiffs claim that Defendant Delray Medical Center caused the decedent's death by prematurely discharging him

6

from Fair Oaks, that is a medical malpractice claim subject to the presuit notice requirements of Florida Statute § 766.106(2)(a).

Plaintiffs' Complaint fails to allege compliance with the presuit notice requirements. In their response to the motion to dismiss, Plaintiffs contend that they "made numerous attempts to avert litigation" as follows: (1) "Plaintiffs notified Defendants August 14, 15, 16, 2011 that their actions were outrageous, egregious and causing the danger of litigation"; (2) on January 23, 2012, an attorney sent Defendants "a detailed Intent to Sue letter" on behalf of Plaintiffs; (3) on August 6, 2015, Plaintiffs Kathleen Woody and Martin Baker "wrote certified mail and emailed all Defendants"; and (4) on August 11, 2015, Plaintiffs Kathleen Woody and Martin Baker "talked with Fair Oaks Risk Management . . . in an effort to avoid litigation." DE 26 at 2. Portions of the January 23, 2012 letter from their attorney are quoted in Plaintiffs' responses to the motions to dismiss; these quoted portions do not refer to an action for medical malpractice, reference the opinion of a medical expert, or otherwise resemble the notice of intent to initiate litigation described in Florida Statute § 766.106(2)(a). *See* DE 26 at 5; *see also* DE 28 at 8. Thus, these allegations in Plaintiffs' responses do not demonstrate compliance with the statute, and Plaintiffs' medical malpractice claims against Defendant Delray Medical Center should be dismissed.

The next issue that arises is whether that dismissal should be with or without prejudice. "[C]ompliance with the prefiling notice requirement of section 768.57 [now renumbered 766.106] [is] a condition precedent to maintaining an action for malpractice and, although it may be complied with after the filing of the complaint, the notice must be given within the statute of limitations period." *Williams v. Campagnulo*, 588 So. 2d 982, 983 (Fla. 1991); *see also S. Neurosurgical Assocs., P.A. v. Fine*, 591 So. 2d 252, 255 (Fla. Dist. Ct. App. 1991) ("a cure is

not available if the statutory period for initiating suit has run before the plaintiff attempts to fulfill the presuit notice or screening requirements").

Florida Statute § 95.11(4)(b) covers medical malpractice claims,[1] and establishes a two-year statute of limitations, a four-year statute of repose, and a seven-year statute of repose where it is alleged that fraud prevented discovery of the injury. The Florida Supreme Court has held that the two-year statute of limitations only begins to run when a plaintiff has "knowledge of the injury," which means "not only knowledge of the injury but also knowledge that there is a reasonable possibility that the injury was caused by medical malpractice." *Tanner v. Hartog*, 618 So. 2d 177, 181 (Fla. 1993). The four-year statute of repose, in contrast, begins to run on the date of the "incident or occurrence" of medical malpractice, regardless of the plaintiff's knowledge. *See Kush v. Lloyd*, 616 So. 2d 415, 418 (Fla. 1992); *see also Woodward v. Olson*, 107 So. 3d 540, 543 (Fla. Dist. Ct. App. 2013) ("[I]n a medical malpractice case, it is the *discrete incident of malpractice* that triggers the running of the statute of repose."); *Whigham v. Shands Teaching Hosp. & Clinics, Inc.*, 613 So. 2d 110, 112 (Fla. Dist. Ct. App. 1993) ("Knowledge of the injury or negligence is not a factor affecting the running of the four-year period of repose.").

Plaintiffs' Complaint alleges that the decedent was wrongfully discharged from Fair Oaks on August 15, 2011. *See* DE 1 at 7 ¶ 27. This action was filed on Monday, August 17, 2015, almost exactly four years after the date of the alleged incident or occurrence of medical malpractice.[2] Because the four-year statute of repose has run, and Plaintiffs have not

---

[1] This statute of limitation also covers claims for medical malpractice resulting in death. *See Ash v. Stella*, 457 So. 2d 1377, 1379 (Fla. 1984) ("by defining an 'action for medical malpractice' to include a claim in tort for damages because of death, the legislature clearly intended this section to apply to wrongful death actions in cases where the basis for the action is medical malpractice").

[2] The Court assumes *arguendo* that, because the last day of the four-year statute of repose fell on Saturday, August 15, 2015, Florida courts would extend the deadline to the next business day, Monday, August 17. *Cf. Herrero v. Black & Decker Mfg. Co.*, 275 So. 2d 54 (Fla. 3d DCA 1973), *approved at* 281 So. 2d 18 (Fla. 1973) (holding that, where the last day of a four-year statute of limitations fell on a weekend, the period was extended to the following business day).

demonstrated compliance with Florida's statutory presuit requirements for medical malpractice claims, they are barred from asserting a medical malpractice claim against Defendant Delray Medical Center.[3]

> **2. Plaintiffs' medical malpractice claim against Defendant Dr. Gold is dismissed in part. The only proper plaintiff is Kathleen Woody, as personal representative of the decedent's estate, and Plaintiffs cannot recover damages for the decedent's or his parents' pain and suffering.**

Defendant Dr. Gold does not seek dismissal of the medical malpractice claim against him. *See* DE 24 at 3 ¶ 6 ("The only claim which should remain as to this Defendant is the one for alleged medical malpractice for the purported wrongful discharge of the decedent from the hospital as this Defendant is not seeking to dismiss that claim at this time."). Plaintiffs' compliance with the statute of limitations, the statute of repose, and the pre-suit requirements for medical malpractice claims are issues that can be waived. *See Doe v. Hillsborough Cty. Hosp. Auth.*, 816 So. 2d 262, 264 (Fla. Dist. Ct. App. 2002) ("Both the statute of limitations and the statute of repose [in the Florida medical malpractice statute] are affirmative defenses."); *Lakeland Reg'l Med. Ctr. v. Pilgrim*, 107 So. 3d 505, 508 n.3 (Fla. Dist. Ct. App. 2013) ("Once a lawsuit has been filed alleging a claim that may involve medical negligence, the defendant health care provider may risk waiving or being estopped from later raising the issue of the plaintiff's noncompliance with statutory presuit requirements by failing to raise the issue in its pleadings."). However, Defendant Dr. Gold does argue that portions of this claim should be dismissed. The Court agrees.

---

[3] As discussed further *supra*, Plaintiffs may also be attempting to allege claims against Defendant Delray Medical Center that do not sound in medical malpractice. These claims may not be subject to the statutory presuit requirements in Florida Statute § 766.106. *See generally Joseph v. Univ. Behavioral LLC*, 71 So. 3d 913, 917 (Fla. Dist. Ct. App. 2011) ("Claims of simple negligence or intentional torts which do not involve the provision of medical care or services do not require compliance with chapter 766 presuit requirements. . . . The fact that a wrongful act occurs in a medical setting does not necessarily mean that it involves medical malpractice. . . . The wrongful act must be directly related to the improper application of medical services and the use of professional judgment or skill.").

      **a.**      **The proper plaintiff is Kathleen Woody, as personal representative of the decedent's estate.**

The Florida Wrongful Death Act provides:

> When the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person, . . . and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued, the person . . . that would have been liable in damages if death had not ensued shall be liable for damages as specified in this act notwithstanding the death of the person injured, although death was caused under circumstances constituting a felony.

Fla. Stat. § 768.19. This act applies to claims that the decedent's death was caused by medical malpractice. *See, e.g., Mizrahi v. N. Miami Med. Ctr., Ltd.*, 761 So. 2d 1040, 1041 (Fla. 2000). A wrongful death action "shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this act, caused by the injury resulting in death." Fla. Stat. § 768.20. "Survivors" are defined as "the decedent's spouse, children, parents, and, when partly or wholly dependent on the decedent for support or services, any blood relatives and adoptive brothers and sisters." Fla. Stat. § 768.18(1).

      Accordingly, to the extent Plaintiffs allege that Defendant Dr. Gold caused the decedent's death, these claims may only be brought by Kathleen Woody, who the Complaint identifies as the personal representative of the decedent's estate. Even if the other Plaintiffs qualify as statutory "survivors," they are not proper party Plaintiffs. *See, e.g., Brown v. Seebach*, 763 F. Supp. 574, 579-80 (S.D. Fla. 1991) (dismissing parents named as plaintiffs in wrongful death action, but allowing action to proceed with representative of decedent's estate as plaintiff); *see also Vaka v. Embraer-Empresa Brasileira De Aeronautica, S.A.*, 303 F. Supp. 2d 1333, 1334 (S.D. Fla. 2003) ("[U]nder Florida law, only a decedent's personal representative may bring survival and wrongful death claims."). The amended complaint should allege each survivor's relationship to the decedent. *See* Fla. Stat. § 768.21 ("All potential beneficiaries of a recovery for

wrongful death, including the decedent's estate, shall be identified in the complaint, and their relationships to the decedent shall be alleged."). For example, although it appears from the pleadings on Defendants' motion to dismiss that Kathleen Woody is the decedent's mother, this is not alleged in the Complaint.

> **b.    Florida's Wrongful Death Act does not allow recovery of damages for the decedent's pain and suffering or his parents' pain and suffering.**

The Florida Wrongful Death Act specifies what damages may be recovered by the decedent's personal representative on behalf of the decedent's estate, as well as by the survivors. *See* Fla. Stat. § 768.21. A decedent's personal representative may recover the following on behalf of the decedent's estate: (1) loss of earnings; (2) loss of the prospective net accumulations of the estate under certain circumstances; and (3) medical or funeral expenses that have become a charge against the estate. *See* Fla. Stat. § 768.21(6)(a)-(c). Survivors may recover "the value of lost support and services from the date of the decedent's injury to her or his death, with interest, and future loss of support and services from the date of death and reduced to present value." Fla. Stat. § 768.21(1). "Each parent of an adult child may . . . recover for mental pain and suffering if there are no other survivors," Fla. Stat. § 768.21(4), but may not recover for mental pain and suffering "with respect to claims for medical negligence as defined by s. 766.106(1)." Fla. Stat. § 768.21(8).

Defendant Dr. Gold raises two issues with the damages sought by Plaintiffs. First, he correctly argues that, because the decedent was an adult when he died and because his death was allegedly caused by medical negligence, the decedent's parents cannot recover for their mental pain and suffering. *See* Fla. Stat. § 768.21(8). Second, he correctly argues that any damages based on the decedent's pain and suffering are not recoverable. *See Knowles v. Beverly Enterprises-Florida, Inc.*, 898 So. 2d 1, 15 (Fla. 2004) (noting the act "merged the survival

11

action for personal injuries which caused the death" with "the wrongful death action into one proceeding only" and "eliminated all claims for the pain and suffering of the decedent from the time of injury to the time of death"); *see also Fla. Clarklift, Inc. v. Reutimann*, 323 So. 2d 640, 641 (Fla. Dist. Ct. App. 1975) (noting that the "philosophy of the Act is to afford recovery of this element of damage for the living rather than the dead"). Thus, insofar as Plaintiffs seek damages based on the decedent's pain and suffering or his parents' pain and suffering, these damages are not recoverable under the Florida Wrongful Death Act.

### C.  Claim for Attorney's Fees and Costs

Defendants have both moved to strike Plaintiffs' claims for attorney's fees and costs because Plaintiffs have not pled a statutory or contractual basis for awarding them. *See generally Associated Indus. Ins. Co. v. Advanced Mgmt. Servs., Inc.*, No. 12-80393-CIV, 2013 WL 1176252, at *3 (S.D. Fla. Mar. 20, 2013) ("Florida law allows the recovery of attorney's fees as damages or costs to the prevailing party only when provided for by statute or contract."). In their response to the motions to dismiss, Plaintiffs cite Article I, Section 26 of the Florida Constitution, which provides in relevant part:

> In any medical liability claim involving a contingency fee, the claimant is entitled to receive no less than 70% of the first $250,000.00 in all damages received by the claimant, exclusive of reasonable and customary costs, whether received by judgment, settlement, or otherwise, and regardless of the number of defendants. The claimant is entitled to 90% of all damages in excess of $250,000.00, exclusive of reasonable and customary costs and regardless of the number of defendants. . . .

Fla. Const., Art. I, § 26. This provision "protects plaintiffs from excessive attorneys' fees by their own attorneys in medical liability claims." *Parham v. Fla. Health Sciences Ctr. Inc.*, 35 So. 3d 920, 926 n.8 (Fla. Dist. Ct. App. 2010). It does not establish a basis for recovery of attorney's fees or costs from the defendant in a medical malpractice action.

In light of the Court's ruling that Plaintiffs may file an amended complaint, the Court will give Plaintiffs an opportunity to plead a proper basis for the recovery of attorney's fees and costs. However, if Plaintiffs' amended complaint fails to do so, any renewed request for attorney's fees and costs may be stricken. *See, e.g., Zolin v. Goldrush77.com*, No. 3:07cv538/RV/EMT, 2009 WL 369932, *3 (N.D. Fla. Feb. 12, 2009).[4]

### IV.    CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that:

1. Defendant Fair Oaks Pavilion at Delray Medical Center is **DISMISSED** with prejudice, as this is merely a fictitious name owned by Defendant Delray Medical Center.

2. To the extent Plaintiffs' claims against Defendant Delray Medical Center sound in medical malpractice, these claims are **DISMISSED** with prejudice for failure to comply with Florida's pre-suit notice requirements for such claims within the time specified in the statute of repose.

3. To the extent Plaintiffs' claims against Defendant Dr. Gold sound in medical malpractice, Plaintiffs Martin G. Baker and Luke Franklin Baker are **DISMISSED** with prejudice, because the only proper plaintiff is the personal representative of the decedent's estate, Kathleen Woody, and as such her claims remain.

4. Plaintiffs' Complaint [DE 1] is **DISMISSED** without prejudice as to any claims Plaintiffs may raise that do not sound in medical malpractice, for Plaintiffs to more precisely clarify the nature of the claims they are pursuing.

---

[4] In light of the Court's ruling that Plaintiffs shall file an amended complaint, the Court does not reach Defendants' arguments that Plaintiffs have failed to state a claim for punitive damages. The Court finds this issue would be better addressed when it is clear precisely what claims Plaintiffs are pursuing.

5. Plaintiffs may file an amended complaint that is consistent with this Order on or before March 8, 2016. **Failure to timely file an amended complaint may result in a dismissal of all claims without prejudice and closure of the case without further notice**.

**DONE AND ORDERED** in Chambers, Fort Pierce, Florida, this 23rd day of February, 2016.

Copies furnished to:
Counsel of record

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE